UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTHONY VILLAFANE,

                          Plaintiff,                        Case # 16-CV-240 FPG

v.                                                      DECISION AND ORDER

DR. RAYMOND HAAG,

                          Defendant.
_____

## INTRODUCTION

*Pro se* Plaintiff Anthony Villafane, a former inmate at Southport Correctional Facility, brings this action under 42 U.S.C. § 1983 alleging that Dr. Raymond Haag, a dentist at Southport, violated Plaintiff's Eighth Amendment rights by demonstrating deliberate indifference to his serious dental condition. ECF No. 1. Presently before the Court are Defendant Haag's and Plaintiff's cross-motions for summary judgment.[1] ECF Nos. 47, 51. For the reasons that follow, Defendant's motion is GRANTED, Plaintiff's motion is DENIED, and this case is DISMISSED.

## DISCUSSION

**I.    Summary Judgment Standard**

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for

---

[1] Plaintiff filed two motions for extension of time to serve his motion for summary judgment on Dr. Haag, which the Court granted. *See* ECF Nos. 55, 56, 57, and 58. It is not clear if Plaintiff ultimately served his motion upon Dr. Haag, but he was able to access it via the Court's ECF system. In any case, because Plaintiff's motion is denied, Dr. Haag is not prejudiced to the extent that he was not served with a hard copy of Plaintiff's motion.

1

the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See id*. at 255. The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. When the moving party has met this initial responsibility, the non-moving party must come forward with "specific facts showing a genuine issue [of material fact] for trial." Fed. R. Civ. P. 56(e)(2). In light of Plaintiff's *pro se* status, the Court must construe his opposition papers liberally "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2009) (internal quotation marks omitted).

## II. Deliberate Indifference to Serious Dental Condition

For medical care to be so inadequate that it amounts to the "cruel and unusual punishment" prohibited by the Eighth Amendment, the plaintiff must prove that the defendant's actions or omissions amounted to "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "The Supreme Court has explained that the 'deliberate indifference' component includes both an objective and a subjective prong." *Wright v. Conway*, 584 F. Supp. 2d 604, 606 (W.D.N.Y. 2008).

The objective prong requires that the plaintiff's condition be sufficiently serious. "A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (finding a serious dental condition where the plaintiff suffered extreme pain, deteriorated teeth, and the inability to eat properly) (internal quotation marks omitted)); *Banks v. Mannoia*, 890 F. Supp. 95, 99 (N.D.N.Y.

2

1995) ("The serious medical need requirement contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain.").

The second prong is subjective and requires the plaintiff to allege that the prison official had actual knowledge of his serious medical needs but was deliberately indifferent thereto. *See Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003); *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). "[N]ot every lapse in prison medical care will rise to the level of a constitutional violation." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003). An alleged delay in treatment due to a "bad diagnosis or erroneous calculus of risks and costs" does not constitute deliberate indifference. *Sloane v. Borawski*, 64 F. Supp. 3d 473, 493 (W.D.N.Y. 2014) (quoting *Harrison*, 219 F.3d at 139)). Moreover, "mere disagreement over the proper treatment does not create a constitutional claim." *White v. Clement*, 116 F. Supp. 3d 183, 186 (W.D.N.Y. 2015) (quoting *Chance*, 143 F.3d at 703); *see also Ciaprazi v. Jacobson*, No. 13CIV4813PACKNF, 2016 WL 4619267, at *4 (S.D.N.Y. Sept. 6, 2016) (granting summary judgment to prison officials and holding that "it would not violate the Eighth Amendment for DOCCS to offer [inmate] only extraction") (collecting cases).

Here, with respect to the objective prong, Plaintiff claims that his dental pain began in September 2012 when Dr. Haag placed two stainless steel crowns on Plaintiff's teeth #3 and #4, located on the upper right side of his mouth. He claims that after the crowning, he experienced severe pain for nearly six months until Dr. Haag extracted the teeth, and he continued to experience pain for another two months after that. Dr. Haag does not contest that Plaintiff's months-long dental pain was a serious condition, and that Court agrees that it was. *See Dennis v. Milicevic*, No. 97 CIV. 7147 (HB), 1998 WL 474200, at *3 (S.D.N.Y. Aug. 13, 1998) ("Prisoners' allegations that they experienced serious physical pain over an extended period of time can rise to the level of a sufficiently serious medical condition under the Eighth Amendment.") (citing *Chance*, 143 F.3d at 702-03

3

(allegations of severe tooth pain for at least six months stated a claim for a sufficiently serious medical condition under the Eighth Amendment)).

With respect to the subjective prong, Plaintiff alleges that over the course of eight months, he filed forty complaints and six grievances indicating that he was in pain, but Dr. Haag failed to extract his teeth or relieve his pain. When Dr. Haag finally extracted the teeth, he commented to Plaintiff that his teeth "must have really been hurting." Plaintiff claims that Dr. Haag should have extracted the teeth sooner and should not have left him in pain for months.

Plaintiff's claims challenge the quality Dr. Haag's care and medical judgment, but they fail to raise a question of fact as to whether Defendant Haag was deliberately indifferent. At most, Plaintiff raises a medical malpractice claim, which "does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

While Dr. Haag did not examine Plaintiff on "each and every day he complained of some form of chronic pain," that does not mean that Dr. Haag was "deliberately indifferent to a serious medical need." *Abreu v. Farley*, No. 6:11-CV-06251 EAW, 2019 WL 1230778, at *11 (W.D.N.Y. Mar. 15, 2019). To the contrary, between September 2012 and May 2013, Dr. Haag treated Plaintiff nine times and addressed his pain and the condition of his teeth each time.

Specifically, at the initial appointment on September 20, 2012, when Dr. Haag crowned Plaintiff's teeth, he advised Plaintiff that he might experience pain due to the procedure and provided Plaintiff with aftercare instructions.

On September 27, 2012, after Plaintiff complained of pain, Dr. Haag examined his teeth and noted that there was "negative percussion," meaning that the teeth were vital, not dead. Dr. Haag prescribed Motrin 600mg three times a day for ten days and adjusted Plaintiff's existing partial denture.

On October 17, 2012, Dr. Haag examined and x-rayed Plaintiff's teeth #3 and #4. Both teeth were vital with pupal inflammation, which indicated that the trauma to the teeth might be reversed with additional time to heal and the use of anti-inflammatory medication. Dr. Haag again adjusted the bite on Plaintiff's partial denture in an effort to relieve pressure. He also prescribed Plaintiff Motrin 600mg, an anti-inflammatory, three times a day for ten days. Dr. Haag further informed Plaintiff that he believed he may have been grinding his teeth, which could be causing him pain. Dr. Haag issued a nightguard and advised Plaintiff that the teeth may need to be extracted if the pain persisted.

On November 19, 2012, Dr. Haag examined teeth #3 and #4 for complaints of pain and administered a percussion test and a cold-sensitivity test, which indicated that the tooth pulp was inflamed, but not dead. Dr. Haag prescribed Motrin 600mg three times a day.

On December 10, 2012, Dr. Haag examined Plaintiff due to complaints of mild transient (occasional) pain in teeth #3 and #4. Dr. Haag explained that the transience of Plaintiff's pain indicated that the teeth were healing. He again adjusted the bite in Plaintiff's partial denture to take pressure off the crowned teeth and instructed Plaintiff to wear it at least four hours a day to allow for adjustment. He prescribed Plaintiff Motrin 400mg for use as needed.

On December 14, 2012, Regional Dental Director Dr. Hartman saw Plaintiff as part of an annual audit and records indicate that no treatment was needed. In January and February 2013, Plaintiff experienced only occasional pain.

On February 21, 2013, Plaintiff complained of swollen gums. Dr. Haag examined Plaintiff and provided salt for rinsing. He also moved the clasp for Plaintiff's denture from tooth #4 to tooth #11 to relieve pressure on teeth #3 and #4.

On March 15, 2013, due to Plaintiff's recent complaints of pain, Dr. Haag extracted the teeth and noted that they would be added to Plaintiff's partial denture. Dr. Haag gave Plaintiff aftercare instructions and prescribed Motion 600mg for use as needed.

On April 5, 2013, Dr. Haag examined and x-rayed Plaintiff's teeth because Plaintiff continued to experience pain. He noted that Plaintiff was healing slowly and that he had a family history of diabetes. He referred Plaintiff to medical recall to rule out type II diabetes. He gave Plaintiff a salt rinse, and prescribed Motrin 400mg and Penicillin.

On April 26, 2013, Plaintiff saw Dr. Haag again and complained that part of a tooth was left in his mouth. Dr. Haag advised Plaintiff that there was not part of a tooth left, but that there was a piece of sharp bone that would "remodel" and work its way out.

On May 8, 2013, Plaintiff saw Dr. Haag again and he noted that the area was healing poorly, but by late May or June, Plaintiff's pain subsided.

The Court acknowledges "that the fact that [Dr. Haag] offered some treatment in response to [P]laintiff's complaints does not as a matter of law establish that [Dr. Haag] had no subjectively culpable intent." *Price v. Reilly*, 697 F. Supp. 2d 344, 364 (E.D.N.Y. 2010) (citing *Archer v. Dutcher*, 733 F.2d 14, 16 (2d Cir. 1984) (denying summary judgment even though evidence showed that plaintiff received comprehensive health care because plaintiff nevertheless raised an issue of fact as to whether defendants delayed emergency medical aid to make plaintiff suffer)). In *Price*, however, not only did the defendants fail to prescribe effective pain medication, they also failed to take an x-ray for several months and then failed to follow up when the x-ray indicated that further tests might be needed. *Id.* Here, in contrast, Dr. Haag took measures at each visit to treat Plaintiff's condition and pain by adjusting his denture, prescribing anti-inflammatories and pain relievers, giving Plaintiff a nightguard, and, ultimately, extracting the offending teeth.

Plaintiff claims that Dr. Haag should have extracted the teeth sooner and that Plaintiff never objected to extraction. He maintains that, after he filed a grievance in October, the Grievance Committee responded that if Plaintiff's crowns did not "calm down," the teeth would be extracted. Plaintiff argues that Dr. Haag should have listened to the Grievance Committee, but he fails to recognize that the Grievance Committee's response was based on Dr. Haag's own written comments to the Grievance Committee that the teeth would be extracted if the crowns did not "calm down." ECF No. 51 at 69. Moreover, Dr. Haag indicated that his objective was to preserve the teeth and that extraction is a last resort. Plaintiff's claim that Dr. Haag should have extracted the teeth sooner implicates Dr. Haag's medical judgment and does not amount to a constitutional claim. *See Grant v. Burroughs*, No. 96 CIV. 2753 (MGC), 2000 WL 1277592, at *5 (S.D.N.Y. Sept. 8, 2000) (noting that "mere disagreements over medical judgment do not state Eighth Amendment claims") (quoting *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990)).

Plaintiff also argues that Dr. Haag's comment that Plaintiff's teeth "must really have been hurting" demonstrates that Dr. Haag deliberately ignored Plaintiff's pain. This Court has rejected similar arguments. In *Munlyn v. Pietrie*, No. 13-CV-6170FPG, 2014 WL 3695488 (W.D.N.Y. July 24, 2014), the plaintiff alleged that the defendants did not believe that he had any pain, or disputed the severity of any pain, and thus refused his requests to see a doctor, took away his neck brace and cane, and told him to stop lying. *Id.* at *6. This Court held that "[t]hese allegations not only fail to show that . . . [defendants] acted with deliberate indifference, *i.e.*, 'for the very purpose of causing harm or with knowledge that harm will result,' *Chance v. Armstrong*, 143 F.3d at 703, they reflect Plaintiff's disagreement with their evaluation and assessment of his medical circumstances." *Id;, see also Grant*, 2000 WL 1277592, at *5 ("[D]efendants did not act with deliberate indifference to plaintiff's medical needs. Plaintiff's complaint is not that he was refused treatment. Plaintiff repeatedly consulted with medical personnel. Rather, plaintiff's complaint is that in his judgment he

should have received pain medication when medical personnel did not believe his condition required pain medication. . . . A difference of opinion between a physician and a prisoner patient does not implicate the prisoner's constitutional rights."); *Wright v. Conway*, 584 F. Supp. 2d 604, 607 (W.D.N.Y. 2008) (granting defendants' motion for summary judgment where plaintiff did not deny that he received medical care and treatment but argued that he needed a stronger pain medication; holding that plaintiff's "complaints demonstrate[d] no more than his personal dissatisfaction with the level of care that he received"); *but see Hayes v. Charles*, No. 10-CV-00380 M, 2013 WL 4718497, at *7 (W.D.N.Y. Sept. 3, 2013) (finding issue of fact as to whether defendant's conduct was the result of medical judgment, negligence, or deliberate indifference where plaintiff alleged that defendant was aware that he was in extreme pain but failed to prescribe any medication beyond the ibuprofen that was available to him).

## **CONCLUSION**

Here, based on the record evidence, Plaintiff has only established a disagreement over the proper course of treatment and has at most raised a claim of medical malpractice rather than deliberate indifference. Accordingly, Defendant's motion for summary judgment (ECF No. 47) is GRANTED and Plaintiff's motion for summary judgment (ECF No. 51) is DENIED. The Clerk of Court is directed to enter judgment in favor of Defendant Dr. Haag and close this case.

IT IS SO ORDERED.

Dated: March 20, 2019
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

8